May it please the Court, Deputy Federal Public Defender Michael Parente on behalf of the Petitioner Juan Valenzuela. I'll try to reserve one minute for rebuttal. Equitable tolling is warranted where a petitioner faces an extraordinary circumstance and is reasonably diligent in protecting their rights. This doctrine naturally applies to a circumstance such as we have here, where an extraordinary circumstance interferes with the petitioner's right to statutory tolling, which is why Valenzuela lost his, why his petition was untimely here. Valenzuela's petition was filed more than eight years after his conviction due to an established period of attorney misconduct that Respondent does not dispute in this appeal. It's the period after that matters, right? So let's just, since your time is limited, let's get down to that. During that period he filed three state habeas petitions, right? Yes. Why couldn't he have filed a federal petition at the same time? Well, he could have, but he was not required to do that in order to mitigate the extraordinary circumstance that he was facing. So I view the question as to whether... I'm sorry, I don't understand the answer. So just take things in small incremental pieces. Your answer to my question, which you did answer, is he could have. Yes. Okay. That did not mean, however, that he was not... I didn't ask another question. I just got an answer to my question, okay? Yes. Well, let me ask the next question. If he could have, how can it then be the subject of equitable tolling? I mean, equitable tolling usually means you can't do it. I mean, it's tolled because there's something that's going on that's preventing you from doing it. I don't understand how in a period when you can do it and when you've admitted, I mean, I don't think you had any choice to admit that he could have done it, how can that possibly be subject to equitable tolling? Well, because I want to qualify my answer. He could have in the sense that he could have physically filed a Federal petition. That was my question. Yes. That was my question. And, well, okay. I'm sorry. I'll take it back. You're right. I guess he could have physically done it even when he was represented by that lawyer. That's true. Although it's hard when you're represented by counsel. Courts sometimes won't accept your stuff, usually don't accept your stuff if you're represented by counsel. So if you try to send something in, you're represented by counsel, at least in the same court. I don't know. Anyway, but, okay. So after the period of the lawyer is over, you say he physically could have done it, but was he somehow impaired or deterred or? Well, he was impaired because Holland asked us to look to whether the extraordinary circumstance stood in the way of a timely Federal petition, and he was not able to file any Federal petition that would have remained on the court's docket for more than a minute because he had no exhausted claims. Nothing had been exhausted by his counsel. So anything that he would have submitted would have just been immediately dismissed. And beyond that, he was eight years beyond the deadline, so he needed equitable tolling anyway. This is not a situation where he could have filed a petition and actually preserved any time remaining on his statutory clock. And so he was, in effect, prohibited from filing a timely Federal habeas petition at the time, and he did what the Supreme Court has given the very simple and clear instructions for petitioners to do, which is to first present each and every claim to the state court. And so in order to protect his rights and to attempt to have a Federal petition on file, he did exactly that and went directly to the state courts first. The first petition he filed was no more than the draft petition that had been prepared by his counsel, and then when he had help from a jailhouse lawyer, he developed that petition more fully during the California Court of Appeal, and that's the 99-day period that the other side relies on to suggest that it's his fault that he was untimely because Evans v. Chavez says that after 60 days, you have to explain your substantial delay. But he did do that. He explained his substantial delay to the state court fully. He said, my attorney abandoned me. He provided a letter from the state bar showing that that misconduct had occurred, saying that he was litigating it. His petition had 265 pages of exhibits, all of which were compiled pro se, 59 pages of pro se briefing. He was trying to present his claims as best he could. Well, diligence isn't really a question here, is it? Well, it is a question in that for equitable tolling, he has to show both the extraordinary circumstance and the diligence. I think that the extraordinary circumstance here goes to why it's a matter of causation. Why was his petition fundamentally untimely in this case? It's because of the attorney misconduct, that 8-1⁄2-year period that put him in a position that other petitioners are not in, which is that he had to start from scratch, 8-1⁄2 years after his conviction, and getting a petition through the state courts within that time, and no petitioner can do that. It's virtually, it's an impediment to filing a timely federal petition that at least meets the requirement. Counsel, just so I understand your argument, are you, do you have any authority that says there's, in effect, a hangover we can look to? What I mean by that is that, let's assume this guy was a really bad lawyer. I think record's been established, this guy was very, very bad. But I'm not aware of any case that says because he was so bad in March, and he was out of there by the end of March, therefore we can still equitably toll for April, May, and June. Or in this case, it would be August, September, and October. Are there any cases you can see that say there's a hangover effect for ineffective counsel? Well, there aren't many cases directing no in the sense that there aren't cases squarely on point where there's this ineffective assistance of counsel on the state habeas side. The closest one is Porter v. Olison, where there certainly is a hangover there, because the petitioner filed a pro se petition in the California Supreme Court after learning that his attorney had resigned from the state bar, and then more than a year after that also filed a pro se federal habeas petition, and the court still remanded for the district court to conclude whether equitable tolling was warranted and expressly stated that it could determine that the misconduct excused the untimely state court filings, which would have entitled him to equitable tolling during that period. So there is at least a contemplation of it. I think that also in Rudin v. Miles, there's another example where you have an extraordinary circumstance occurring earlier in the state proceeding. There was the superior court, which had misled her into believing that her petition was timely, and then she only found out at the end when the Nevada Supreme Court reversed that determination and said, no, it's untimely. As a result, the entirety of the state proceedings were untimely, and the court still excused that period of time, even though in effect the extraordinary circumstance was over after she was misled and she was excused later on for the untimely state petitions. So there is at least authority that says what we're really looking to is what the Supreme Court asks us to look to, which is whether the extraordinary circumstance prevented the filing. And I think so long as the focus is on that fundamental question, then it's kind of easier to analyze these situations as opposed to trying to just count up how many days was the person represented or more mechanical approaches to determining whether equitable tolling is warranted. Valenzuela, actually I see that I'm running out of time, so I'd like to reserve my time if there are no further questions. Thank you. Good afternoon, and may it please the Court, Stephen Mercer for Respondent. Respondent is not asking for anything new here. Under a straightforward and established equitable tolling analysis, one touched on by Judge Kaczynski, equitable tolling ends once the extraordinary impediment to federal filing is lifted or there's a lack of diligence, whichever comes first. And here, any obstacle to timely federal filing ended when Mr. Melson's representation terminated and Petitioner began filing his own petitions in state court. Isn't Mr. Valenzuela arguing a new impediment when he was unable, according to his statements here, he was unable to file in the federal court because he had fully unexhausted his state relief? In other words, he went to the state Superior Court and to the Court of Appeals, and even though it wasn't timely, he still had to do that, did he not? He still had to take it to the Court of Appeals and then attempt to take it to the California Supreme Court? Well, he did, and he actually did that in this case, and I'll get to that in a moment. But Your Honor is absolutely right. He's asking for a hangover, essentially, from Melson's misconduct, which is unprecedented if this Court were to adopt such a rule. That would be new, that would be amorphous, and it would be different because this Court's precedent under Gaston v. Palmer and Sanders v. Tilton says that a petitioner who is capable of filing a state petition is deemed equally capable of filing a federal petition. And here, nothing about Melson prevented Petitioner from filing three state petitions during that extended one-year limitation period. But what would the federal petitioner have looked like? So instead of going to state court, he says, Oops, I had a bad lawyer, and now presumably he knows all this law off the top of his head. He says, I've been equitably told, equitably told, and stopped. The clock is ticking, and I had better get into federal court right away and say what? Well, number one, he knew that he had a one-year limitations period. Are you answering my question? These are his options. Did you hear my question? I did. Excuse me. Let me try to answer. What he could have done is to file simultaneously in state court and federal court and then ask to stay his petition. To stay the federal petition to exhaust his state remedies. The U.S. Supreme Court in Pace specifically endorsed that approach as early as 2005. Moreover, this Court just last year clarified in Mina v. Long that a district court has the discretion to stay a wholly unexhausted federal petition. Mr. Valenzuela acknowledges this as much in footnote six of his reply brief. So he had that option. His other option was to go to the California Supreme Court within that one-year limitations period and then proceed to federal court. But what I'd like to get at is something that I don't think was really addressed fully in the briefs. Well, let me go back to that. Because in 2006, this Court decided Raspberry v. Garcia in which it said, once a district court determines that a habeas petition contains only unexhausted claims, it need not inquire further as to the petitioner's intentions. That's correct. Two or three points on that, if I may. Number one, they basically said the district court may dismiss it. But number two, this Court in Mina just a year later said, whatever stray comment from Raspberry in dicta might have said to the contrary, let us, the Ninth Circuit, be clear, a district court does in fact have the discretion to stay a wholly unexhausted petition. Wasn't Mina in 2016? That's correct. But I'll remind the Court that as early as 2005, the United States Supreme Court in Pace specifically said, this is an option to prevent untimely federal filing. You file a protective petition. But if I may get to the crux here, is that the parties agreed that Mr. Valenzuela had until July 30, 2009, to file a federal petition. During that time, he did go all the way up to the Cal Supreme, and he got the denial on July 14th. And that's his date and his brief. So at that point, he had at least six exhausted claims and two weeks left on the clock without any additional tolling. So what did Mr. Valenzuela do with his at least six exhausted claims and two weeks left on the clock? Well, he still didn't go to federal court, even though he had time. Instead, he waited another 66 days, again beyond the state's reasonable window, and went back to the California Supreme Court to raise new claims. That is not an extraordinary circumstance that prevented a timely federal filing. And it certainly doesn't show diligence on Mr. Valenzuela's part. And both of those are his burden to prove throughout. So whether or not the state court made a timeliness ruling based on his 99-day delay, based on Nelson's misconduct, or some other reason, is beside the point, because he still had time on the clock, the one-year extended deadline that we all agree on, and exhausted claims. The fact that he chose to pursue relief elsewhere, including the fact that he chose to return to the California Supreme Court and raise two more claims, it's not Nelson's doing. Nelson hasn't been in the picture for years at this point. And it certainly doesn't show diligence on his part. So in closing, I would say Valenzuela is, in fact, asking for something new. But it would also be unworkable, because if the federal court, Mr. Valenzuela faults the federal court for not making a finding as to why the state court ruled as it did. But I don't know how that would work. I don't know how a federal court would determine that question. Are we going to depose state appellate justices? Some of them aren't even there anymore. Are you going to certify a factual question? Wouldn't you want to be there? What's that? Wouldn't you want to be there when they depose state appellate justices? I would. I would, but that's beside the point. So there's a good reason why the United States Supreme Court has said repeatedly, in Pace, in Bradshaw v. Ritchie, in Estelle v. McGuire, if the state court does, in fact, make an indication that a request for review is timely or untimely, that's the end of the matter. And all of the cases that Mr. Valenzuela has cited, including in his 28J letter, all involve cases where there was no indication from the state courts whether the request for review is timely or untimely. And then, and only then, in these gap-tolling cases, does a federal court look to see whether an unexplained denial is reasonable under state law. But when you have an indication like we have here, that's the end of the matter. Now, as for Porter v. Olson, I would dispute that that's authority that supports this sort of hangover or bleed-over effect. That case was a remand order because the record wasn't developed, just as in this case. And in Porter, there never was a finding by any court that there was equitable tolling, either by the Ninth Circuit or on remand. And Porter v. Olson, I think, does not support Mr. Valenzuela's position because, like all the other cases of equitable tolling for attorney misconduct, the Ninth Circuit assumed that the petitioner might be entitled to equitable tolling throughout the duration of the representation, up until the day that ended, not beyond it. So even in that dicta, doesn't support this bleed-over effect where attorney misconduct is an extraordinary circumstance that can somehow just linger or last forever. And I think what Mr. Valenzuela is proposing is a rule that says that extraordinary circumstance never ends, as long as I could blame my counsel for the untimeliness of state petitions. So presumably, Mr. Valenzuela could file petitions for 20 years, up and down the state courts, even with 99-day gaps in between. And as long as he could blame his former counsel for their untimeliness, then he'd be entitled to 20 more years of equitable tolling. That can't be the rule. And that's why the Supreme Court has said, if there is a clear indication from the state court about untimeliness, that's the end of the matter. And that equitable tolling for attorney misconduct ends the moment that a petitioner is no longer relying on an attorney to pursue relief. And that's what we have here. Thank you. Thank you. Your Honor, in terms of the rule here, the rule that we're asking to adopt is one that the court would traditionally adopt, which is just whether the extraordinary circumstance caused the petitioner to lose time that they otherwise would have had. Valenzuela wants to be back in the position that he would have been in the absence of the misconduct. This is not a he's not asking for an indefinite period of time to file his state petitions. So you concede that the cause you're arguing is Nelson's ineffective assistance. That is the cause. And the opening brief makes clear that after Valenzuela had one exhausted claim, after that first California Supreme Court denial, he's not asking for any equitable or statutory tolling when he went back to the California Supreme Court. And he doesn't even need that because he was so diligent. It's only because he was so diligent that when you do the gap tolling analysis and just give him back what was in fact caused by the attorney misconduct, he has enough time on the clock that he on his own clock that he doesn't need further equitable or statutory tolling for that. So Valenzuela is asking for his clock ended one year from the date of the first California Supreme Court denial. No more than that. That was the end. We're not conceding that he didn't remain diligent when he was through the point of filing, when he was continuing to try to exhaust his claims. But he's not attributing any equitable tolling to his attorney misconduct beyond that. Once he had that exhausted claim, it's done. And in terms of the protective petition and pace, this is not a case where that could apply, as I said, because there was nothing to protect. And Rudin has already said that that's not required of petitioners to file a protective federal habeas petition. It would essentially encourage habeas petitioners in every case to file such a petition because it would be the only way to ensure against extraordinary circumstances that might otherwise interfere with the state proceeding. Thank you. Thank you.
judges: Kozinski, Owens, Settle